IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CMI CAPITAL MARKET INVESTMENT, LLC. et al.,

Plaintiffs,

v.

MUNICIPALITY OF BAYAMON, et al.,

Defendants.

CIVIL NO. 04-1638 (RLA)

**ORDER DISMISSING CLAIMS ASSERTED AGAINST THE GOVERNMENT DEVELOPMENT BANK**

Plaintiffs[1] instituted these proceedings against the Government Development Bank ("GDB" or "the Bank"), and the Municipality of Bayamón ("Bayamón") seeking declaratory judgment as well as claiming breach of contract and collection of monies. Plaintiffs also demand both contractual and tort damages. Plaintiffs' causes of actions arise from the default on three finance lease agreements entered into by two agencies of the Puerto Rico Government[2] and by codefendant the Municipality of Bayamón. All three leases were originated or at some point handled by a Mr. Alvin Aguirre, and/or companies operated by

---

[1] Named plaintiffs are: CMI Capital Market Investment, L.L.C. ("CMI"), Wilmington Trust Company, as trustee of the PR Tax Exempt Lease Certificate Trust 2002 Series A ("Wilmington"), and investors Richard J. Schmeelk ("Schmeelk"), William B. Finnerman and JIRA Associates limited Partnership (collectively referred to herein as "Plaintiffs").

[2] These are the Puerto Rico Office of Courts Administration (by its Spanish acronym, "OAT") and the Puerto Rico Consumer Affairs Department (by its Spanish acronym, "DACO").

him, including AA Public Finance Co., Inc., (hereinafter jointly referred to as "AA"), and eventually assigned by AA to the Plaintiffs. For each of these financial leases, Plaintiffs portray a distinct unlawful scenario pursuant to which AA purportedly defrauded Plaintiffs of the amounts due under the leases.

In essence, Plaintiffs claim that GDB should be held accountable for AA's unlawful conduct because the Bank purportedly disregarded its statutory, regulatory and/or fiduciary duties to oversee and/or control the sale, transfer and assignment of the financial leases in question. The Bank denies any such liability and has moved the court to dismiss the claims asserted against it pursuant to Rule 12(b)(6) Fed. R. Civ. P. which Plaintiffs have opposed.

The court having considered the arguments presented by the parties as well as the applicable law finds that dismissal of the claims asserted against GDB is warranted.

## I. THE CLAIMS

In their Complaint Plaintiffs allege that pursuant to the Municipal Financing Act, 21 P.R. Laws Ann. §§ 6001, 6008a and 6028 (2005), the GDB's Enabling Act, 7 P.R. Laws Ann. § 581 (2000), and Executive Order 1993-20 (the "Executive Order"), GDB was required to oversee the sale, transfer and assignment of government backed financial leases such as the ones entered into by OAT, DACO and Bayamón which are the subject of this litigation.

In the alternative, Plaintiffs claim that GDB breached its "implied warranties in government backed leases". Plaintiffs also

argue that GDB should be estopped from denying them compensation because the Bank, by means of a December 10, 2002 letter addressed to the Standard & Poor's Rating Service ("Standard and Poor's"), purportedly committed to honor any contract or assignment with any investor that purchased paper from any Puerto Rico Government instrumentality.

Lastly, when faced with GDB's arguments for dismissal, Plaintiffs devised three new liability theories against the Bank, i.e., "improper payment," an "agency relationship," and the doctrine of "*respondeat superior.*"

**II. RULE 12(b)(6) STANDARD**

In disposing of motions to dismiss pursuant to Rule 12(b)(6) Fed. R. Civ. P. the court will accept all factual allegations as true and will make all reasonable inferences in plaintiff's favor. Frazier v. Fairhaven Sch. Com., 276 F.3d 52, 56 (1st Cir. 2002); Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000); Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 92 (1st Cir. 2000).

Our scope of review under this provision is a narrow one. Dismissal will only be granted if after having taken all well-pleaded allegations in the complaint as true, the Court finds that plaintiff is not entitled to relief under any theory. Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995) *cert. den.* 116

S.Ct. 1044 (1996); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994). Further, our role is to examine the complaint to determine whether plaintiff has adduced sufficient facts to state a cognizable cause of action. Alternative Energy, 267 F.3d at 36. The complaint will be dismissed if the court finds that under the facts as pleaded plaintiff may not prevail on any possible theory. Berezin, 234 F.3d at 70; Tompkins, 203 F.3d at 93.

## III. FACTUAL BACKGROUND

Given the applicable legal standard and after a careful examination of the extensive allegations of the Complaint as well as the documents incorporated by reference therein,[3] the following allegations are deemed true for purposes of our analysis regarding the validity of Plaintiffs' claims.

In order to secure more competitive interest and finance charges for the leases to be entered into by local agencies and municipalities with private entities the Puerto Rico Governor issued

---

[3] The fact that in its Motion to Dismiss GDB included copies of the Executive Order, the assignments of certain leases to Plaintiffs, the Bayamón lease, and GDB's letter to Standard & Poor's - all of which are central to Plaintiffs claims - does not convert its request into a summary judgment mechanism. *See, i.e.*, Perry v. N. England Bus. Serv., Inc., 347 F.3d 343, 345 n.2 (1st Cir. 2003) ("Where, as here, a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).") (internal quotation marks and citation omitted); In re Colonial Mortgage Bankers Corp., 324 F.3d 12. 15 (1st Cir. 2003) (In ruling on a motion to dismiss the court shall consider "not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice.")

an Executive Order on May 28, 1993 which required that these contracts be previously submitted for "consideration" to the GDB in order for the Bank "to pass judgment on [their] costs, terms and conditions, as Fiscal Agent of the [pertinent Government] agency, instrumentality, or municipality."

Subsequently, the Puerto Rico Financing Act of 1996 was enacted (hereinafter the "Municipal Financing Act")[4] whereby "every obligation incurred [by a municipality] shall have the prior approval of the [GDB]." 21 P.R. Laws Ann. §6008a.

Within this statutory and regulatory scheme, AA entered into numerous finance leases with the Government of Puerto Rico, its agencies, dependencies, instrumentalities and municipalities, including the three which are the subject of the Complaint filed in this case.

**A. OAT LEASE**

Government Lease Purchase and Option Lease Agreement No. MPR980183 (hereinafter "the OAT Lease") was executed on December 1998 by and between OAT, as lessor, and AA, as lessee. The OAT Lease covered certain fiscal software described in the lease contract generating payments in five (5) annual installments of $771,449.12.

According to the Complaint, AA "fraudulently created" a duplicate of the OAT Lease (referred to as Lease No. MPR980183**A**), and

[4] Act No. 64 of July 3, 1996, as amended by Act. No 75 of August 12, 1997, 21 P.R. Laws Ann. §§ 6001-6029 (2005).

proceeded to assign not only the original OAT Lease, but also its duplicate. In 1999 AA assigned one version of OAT Lease to Strong and Lehigh (hereinafter "Lehigh") and on August 1st, 2002, AA assigned another OAT Lease to CMI, plaintiff herein. CMI, a company dedicated to financial investing, in turn assigned its lease to the Robert Frasco's Children Trust, from which plaintiff Wilmington subsequently acquired it on December 3, 2002.[5]

Faced with demands for payments due over the OAT Lease from both Lehigh and Wilmington claim, OAT consigned the corresponding monies and filed an action in interpleader and for declaratory judgment in this District which is currently pending under Office of Courts Admin. v. AA Public Finance Co, Inc., Civ. No. 03-1772 (JAG).

**B. DACO LEASE**

On July 10, 2001, Lease Purchase Agreement No. MPR-010671 (hereinafter, the "DACO Lease"), was executed by and between DACO, as lessee, and Royal International Electronics & Furniture, Inc. ("Royal"), as lessor. On or about August 2001, Royal assigned the

---

[5] The following summarizes the transactions involving the OAT Lease:

OAT - AA (12/98) - Lehigh (1999)

- AA - CMI (8/1/02) - RFC Trust - Wilmington (12/3/02)

DACO Lease to AA which in turn assigned it to Lehigh that same year. Subsequently, Lehigh assigned the DACO Lease to plaintiff Schmeelk.[6] On or about August 6, 2003, Schmeelk learned that "the real [DACO] lease only included 9, rather than 39 pieces of equipment identified in the specifications of [his] assignment."[7] DACO informed Schmeelk that monthly payments under the lease were for $2,400.00, far less than the $14,139.87 per month "set forth in the lease documentation entered into by Schmeelk."[8]

According to Plaintiffs, the DACO Lease assigned to Schmeelk was "illegally created, altered and modified,"[9] presumptively by AA.

**C. BAYAMON LEASE**

On September 24, 2001, Municipal Lease Agreement No. MPR-010477 (hereinafter, the "Bayamón Lease") was executed by and between AA, as lessor, and co-defendant Bayamón, as lessee, for certain vehicles and equipment described therein, generating payments in three (3) annual installments of $924,680.63. Sec. 11.1 of the Bayamón Lease specifically provided that the Lease Agreement as well as the

---

[6] The following summarizes the transactions involving the DACO Lease:

DACO - Royal (7/10/01) - AA (8/01) - Lehigh (2001) - Schmeelk

[7] Complaint ¶ 42.

[8] Complaint ¶ 41.

[9] Complaint ¶ 80.

Lessee's obligations to make payments thereunder, could "not be assigned by Lessor."

Notwithstanding this prohibition, on or about November 26, 2001 AA assigned the Bayamón Lease to CMI, which in turn, assigned it to plaintiffs Schmeelk, William B. Finnerman, and JIRA Associates Limited Partnership (jointly referred to as the "Investors"). Despite having previously assigned the Bayamón Lease to CMI, on or about May 2002, AA accepted from Bayamón a check issued by GDB which effectively terminated the lease agreement.

Bayamón subsequently rejected Plaintiff Investors' collection demand on the Bayamón Lease. According to Bayamón, "it had no obligation to make [any] payment"; any assignment of its lease "required the Municipality's consent," and it "had not consented to its lease assignment to CMI," nor had it executed any acknowledgment of the assignment to either CMI or the Investors.

Given Bayamón's response and the contractual prohibition against assignment, the alleged acknowledgments of the assignment of the Bayamón Lease received by the Investors included "forged signatures" again, presumably, by AA.[10]

On December 2002, Standard & Poor's reported that it had placed Puerto Rico on a Credit Watch with negative implications due to growing concerns in the capital market regarding several "government-

[10] Complaint ¶ 62.

backed obligations, particularly finance lease agreements."[11] The GDB responded to Standard & Poor's report through a letter dated December 10, 2002, wherein it expressed its views "with respect to the pertinent facts and issues relating to the lease agreements entered into by certain Executive Agencies and Instrumentalities ("Executive Departments") of the Commonwealth of Puerto Rico and [AA]."[12] In its correspondence GDB informed Standard & Poor's that the Government intended to honor any lease agreements entered into by those agencies and AA, except for those where fraud was involved. As to the latter, those leases would "not be honored unless special circumstances exist[ed] that, in the sole judgment of GDB's Board of Directors, justif[ied] their payments in order to protect the good name and credit of the Commonwealth."[13]

## IV. THE LAW

### A. GDB - LEGAL DUTY

In essence, Plaintiffs' claims for liability from GDB are based on their contention that GDB had a legal duty to oversee the payment, sale, transfer, and/or assignment of the leases at issue as well as compliance therewith. However, a detailed review of the applicable statutory scheme makes it clear that no such duty exists.

---

[11] Complaint ¶ 22.

[12] Complaint ¶ 23 and Exh. E to GDB's Motion to Dismiss (docket No. 22).

[13] *Id.*

Under Puerto Rico law, "[o]bligations are created by law, by contracts, by quasi contracts, and by illicit acts and omissions or by those in which any kind of fault or negligence occurs." Art. 1042 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 2992 (1990). Obligations arising from the law, however, are "not presumed." Art. 1043 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 2993. Moreover, the only "demandable obligations" arising from the law are those "expressly determined" by the Civil Code or in special laws. *Id.* By "expressly," this section means "clearly, specifically, concretely and manifestly." Franco Oins y Jones v. Caneja, 26 D.P.R. 518, 525, 26 P.R.R. 457 (1918). Obligations derived from the law may not be presumed based upon mere conjectures or upon the logical relation of one legal precept with another. *Id.*

Pursuant to Art. 1046 of the Puerto Rico Civil Code, 31 L.P.R.A. § 2996, absent such express legal duty, an alternative source of a "demandable obligation" would be the existence of a wrongful or negligent act or omission, which obligation would be governed by the provisions of Art. 1802 of the Puerto Rico Civil Code. Art. 1802, which governs ordinary tort law within Puerto Rico, provides that "[a] person who by an act or omission causes damages to another through fault or negligence shall be obliged to repair the damage done." 31 Laws of P.R. Ann. § 5141 (1990).

In order to state a claim under Art. 1802 a plaintiff must establish three basic elements, i.e., proof of damages, a causal

relationship between such damages and the act or omission of another person and that such act or omission was wrongful or negligent. Admor. F.S.E. v. Almacenes Ramón Rosa, 151 D.P.R. 711, 725 (2000); Soc. de Gananciales v. González Padín Co., Inc., 117 D.P.R. 94, 106 (1986).

In Puerto Rico, "[a]n omission gives rise to a cause of action [under Art. 1802] only in cases where there is a legal duty to act." De-Jesus-Adorno v. Browning Ferris of P.R., 160 F.3d 839, 842 (1st Cir. 1998); Soc. de Gananciales v. González Padín Co., Inc., 117 D.P.R. at 106. This special duty to act "arises in one of three ways: (1) by a statute, regulation, ordinance, by law or contract; (2) as the result of a special relationship between the parties that has arisen through custom; (3) or as the result of a traditionally recognized duty of care particular to the situation." De-Jesus-Adorno, 160 F.3d at 842.

The Puerto Rico Supreme Court ruled in Soc. de Gananciales v. González Padín that an omission is considered illicit when it entails the breach of a special obligation to prevent the damage. The Court further noted that, in order to impose liability arising from an omission the court must ascertain whether or not there was a legal duty to act on the part of the person who caused the damage and whether the damage could have been avoided had the person who caused it complied with such duty.

Thus, in order to succeed under either theory of liability, i.e., a legal duty or tort, Plaintiffs must show that GDB had an express legal obligation or special duty of care to prevent the damages claimed by them.

In the Complaint as well as in their subsequent filings Plaintiffs essentially rely on three distinct legal sources for this purported duty of care: (1) the GDB's Enabling Act, (2) the Executive Order, and (3) the Municipal Financing Act.[2]

We now proceed to examine these three alleged sources of liability in order to ascertain whether or not GDB was bound by any such duty at the time of the events cited in the Complaint.

**1. GDB Enabling Act**

Pursuant to the GDB Enabling Act, Act No. 17 of September 23, 1948, as amended, 7 P.R. Laws Ann. §§ 551 - 595 (2000), GDB was created to "aid the Commonwealth of Puerto Rico in the performance of its fiscal duties and more effectively to carry out its governmental responsibility to develop the economy of Puerto Rico." § 551.[3] GDB's

---

[2] Plaintiffs also cite Act No. 265 of September 3, 2003, known as the Act for Regulating Certain Government Financing and Personal Property Leasing Contracts, 3 P.R. Laws Ann. §§ 8161 - 8166 (Supp. 2005) another related, albeit inapposite statutory provision, which prospectively required prior written approval from the GDB for *inter alios*, the execution of finance lease contracts as well as their assignments and/or transfers. See Art. 3, 3 P.R. Laws Ann. § 8162.

[3] Art. 3 of this statute dissolved the Development Bank of Puerto Rico which had been created in 1942 except to the extent necessary for the transfer of assets to the newly created GDB. 7 P.R. Laws Ann. § 553. Nevertheless, as further discussed, the GDB retained the role of "fiscal agent" for the Government of Puerto Rico, which

charter does not authorize GDB to pay out amounts or debts incurred by the Government of Puerto Rico or other related governmental entities from its own funds. § 552. Rather, its "Constitutional Charter" provides that GDB may, *inter alios*, act as depositary or trustee of governmental funds as well as lend money to the Commonwealth and its instrumentalities. *Id.* In this regard, GDB's nature is "analogous to" that of other banks.

GDB is also authorized by law "to act as fiscal agent[,] as paying agent and as a financial advisory and reporting agency of the Commonwealth of Puerto Rico, and of the agencies, instrumentalities, commissions, authorities, municipalities and political subdivisions of Puerto Rico." § 552.

A fiscal agent is generally defined as "[a] bank or other financial institution that collects and disburses money and serves as a depositary of private and public funds on another's behalf." Garner B.A., *Black's Law Dictionary*, p. 69 (8th ed. 2004); *cf.*, Art. 15 of the Civil Code, 31 P.R. Laws Ann. § 15 (1993) ("[t]he words of a law shall generally be understood in their most usual signification").

GDB is expressly authorized to act as fiscal agent of the Government "for the purposes of registering, authenticating or countersigning bonds, notes or other evidence of indebtedness." § 581. The GDB is also authorized, but not required to "act as a paying or co-paying agent, with or on behalf of the Treasury of

---

had been granted to the predecessor bank in 1945.

Puerto Rico for the payment of interest and principal of bonds, notes or other evidences of indebtedness issued by the Commonwealth of Puerto Rico,... its agencies,... and by or on behalf of the municipalities of Puerto Rico." § 582. Furthermore, GDB is directed to submit a report to the Governor, the Secretary of the Treasury and the Council of Secretaries prior to the issuance, initial sale or exchange of any bonds, notes or other evidence of indebtedness by a governmental or municipal entity, regarding the feasibility of such financing procedure, including the GDB's recommendation as to maximum interest rate, redemption privileges and premium therefor, maturity schedule, proper sale procedure and other relevant information. §§ 583 and 585.

Based on the foregoing, it is evident that pursuant to the GDB's Enabling Act the Bank's primary responsibility is to ensure that the Commonwealth of Puerto Rico and its instrumentalities adopt sound financial policies and enter into financial transactions that will promote the most fiscally sound use of public funds. GDB is the governmental instrumentality that ensures that the Government's best interests are well served in any particular financial deal. However, it is important to bear in mind that its responsibility is to the Government and not to individuals who may, at a later point in time, play a role in such financial arrangements.

According to its Enabling Act GDB is not required to, nor does it oversee the performance, payment and compliance of any bond, note

or evidence of indebtedness once issued, or the subsequent transfer of assignment of such debt. Furthermore, GDB does not ensure, nor guarantee investors that funds will be available to repay any specific indebtedness.

Even assuming that the GDB's Enabling Act was applicable to the financial leases at issue GDB would, at best, have been required to evaluate the financing terms set forth in the leases, prior to their issuance or execution, and to prepare a "report" for the Government itself as to the feasibility or desirability of the financing mechanism involved in each contract.

The GDB's Enabling Act did not impose any duty to oversee the performance and payment of the leases, nor the subsequent sale, transfer, and/or assignment by private parties of the lease agreements after their execution. Nowhere does the GDB's Enabling Act impose upon the GDB a duty to establish procedures and controls in order to prevent the subsequent fraudulent assignment by private parties of a false or duplicate lease.

There is nothing in the GDB's Enabling Act which upholds either a legal or an implied duty to prevent the fraudulent conveyance of governmental finance leases by private parties, which would give rise to Plaintiffs' claims against the Bank.

**2.Executive Order 1993-20**

Executive Order 1993-20 addressed two distinct financial matters. First, it was intended to require governmental agencies and

instrumentalities needing to subscribe to financial lease agreements to "submit them previously" to GDB to pass judgment on the financial aspects of the same. Second, the Executive Order provided that any agency or instrumentality with "funds available for investments" should consult with GDB prior to implementing any investment policies.[4]

We focus our analysis on the first objective as it relates to the financial leases at issue in these proceedings.[5] In this regard, the Executive Order recognized that agencies, instrumentalities and municipalities had the legal authority to enter into "financial lease contracts, or other similar contracts" for the acquisition of goods. The Executive Order simply stated that "[i]n order to obtain more favorable interest costs for the Government of Puerto Rico, it was considered necessary and convenient that in such financial lease agreements, or other similar contracts, the [GDB], as Fiscal Agent, pass judgment on the effective cost of the transaction and on the terms and conditions thereof." Thus, the Executive Order merely required any agency, instrumentality, or municipality that needed to subscribe a financial lease agreement or other similar contract to

[4] Exh. A to GDB's Motion to Dismiss (docket No. 22).

[5] Even though inapposite to the issues at hand, we mention the second topic covered by the Executive Order because the requirement of establishing "a formal consultation procedure" applied exclusively to government investments and the Complaint at ¶ 14 erroneously implied that the Executive Order imposed on GDB the duty to create such "formal procedures" for the initial consultation regarding the terms of the financial leases.

"submit the same to the [GDB'] consideration" in order for the Bank, as the Government's Fiscal Agent, to review its financial terms and conditions to ensure these were beneficial to the Government.

There is nothing in the Executive Order which would lead us to conclude that it imposed a duty upon the GDB to ensure the performance and payment of the leases, compliance therewith, nor to oversee or control the future sale, transfer and/or assignment by private parties of such lease contracts. Nor does the document guarantee or represent to potential investors that GDB would in any way continue to monitor those leases once approved at their inception. Rather, pursuant to the terms of the Executive Order, GDB merely had to continue fulfilling its statutory role as the Government's fiscal agent in accordance with its Enabling Act by ensuring that future financial lease agreements executed by government instrumentalities had adequate financial terms and conditions.

There is no support for Plaintiff's contention that pursuant to the Executive Order the GDB had a duty to investigate or keep track of all sales, transfers and/or assignments of the lease contracts at issue.

**3. Municipal Financing Act of 1996**

Arts. 10 and 31 of the Municipal Financing Act of 1996, 21 P.R. Laws Ann. §§ 6008a and 6028 (2005), provide that all obligations incurred by the municipalities must secure prior approval from the

GDB in its capacity as their fiscal agent. The Municipal Financing Act also mandates the GDB to establish, by regulation, the requirements of all bonds, promissory notes and credit instruments to be executed or issued by the municipalities. The statute further directs GDB to establish, by regulation, the applicable procedure for its approval of these municipal obligations. Until the regulations were issued, the GDB had to take the necessary provisional measures to ensure compliance with the Act's provisions. *Id.*

According to the Statement of Motives of Act No. 75 of August 12, 1997 which amended the Municipal Financing Act to impose the requirement of prior consultation with the GDB, its purpose was to facilitate the contractual procedure regarding municipal loans in a manner compatible with GDB's fiscal duties over municipal loan activities.

Simply stated, the Municipal Financing Act, as amended, again expounded GDB's role as a fiscal agent of all municipal entities and required GDB to set forth procedures for the approval of the financial terms of municipal financial lease agreements in accordance with this role.

Contrary to Plaintiffs' arguments, the Act does not impose on GDB any duty to oversee either the compliance, performance and/or payment of the leases or to oversee or control the subsequent sale, transfer and/or assignment by private parties of such lease contracts once approved.

Inasmuch as the applicable statutory scheme did not impose upon GDB a duty to oversee either the compliance with or payment of the leases assigned to Plaintiffs, no cause of action may arise against it based on its alleged failure to purportedly comply with its statutory, fiduciary and/or regulatory duties to oversee and/or control the sale, transfer and assignment of the leases.

As previously noted liability will attach only if there is a legal duty to act. Plaintiffs' attempt to circumvent this basic legal principle proves futile. The evidence in this case is clear that GDB had no duty to supervise the transfer of three financial leases from AA to other private parties, an entirely private transaction where no governmental entities participated. GDB's alleged failure to undertake an obligation which it was not legally bound to assume cannot possibly constitute the basis for Plaintiffs' alleged damages.

Accordingly, Plaintiffs' claims against the GDB in Counts V, VI and VII of the Complaint based upon the breach of a purported obligation and/or "fiduciary duty" must be and are hereby **DISMISSED.**

**B. "IMPLIED WARRANTY" DOCTRINE**

As an alternative, Plaintiffs contend that the GDB breached its "implied warranties in government backed leases." However, we find that this theory is also unavailable to Plaintiffs as grounds for relief vis à vis the GDB.

In Puerto Rico, the doctrine of "implied warranty" has been essentially used in product liability cases whereby manufacturers or

those in the business of selling products are held strictly liable for injuries to consumers. *I.e.*, Mendoza v. Cervecería Corona, 97 D.P.R. 499 (1969). It has also been discussed in the context of an independent contractor's implied or express warranty of performing services in a workmanlike manner under Maritime Law, Diesel Tanker S.D. Maddock, Inc. v. Commonwealth Oil Refining Co., Inc., 104 D.P.R. 834 (1976), and a hospital's implied warranty to a patient that an attending doctor is competent and qualified to provide medical assistance. Martínez Vega v. Martínez Rosado, 116 D.P.R. 397 (1985).

While the phrase "express warranty" has been mentioned in the context of analyzing a specific type of banking transaction,[6] it has never been extended to situations such as the one before us.

In any event, even assuming, *arguendo*, that such doctrine could somehow be deemed applicable to the facts before us, it could not provide grounds for GDB's liability.

Even though Puerto Rico law sets forth certain implied warranties upon a seller, assignor or conveyor of an investment credit regarding its validity or authenticity,[7] no such obligation is

---

[6] *See*, A.E.E. v. Las Americas Trust Co., 123 D.P.R. 834 (1989) (an endorsing bank may be viewed as providing an "express warranty" that an endorsed check is genuine, on the basis of the usual course of banking business and common practice).

[7] *See i.e.*, Art. 1419 of the Puerto Rico Civil Code, 31 P.R. Laws Ann § 3944 ("a vendor in good faith shall be liable for the existence and legitimacy of the credit at the time of the sale" and Art. 266 of the Commerce Code, 10 P.R. Laws Ann. § 1742 ("[t]he conveyor shall answer for the legality of the credit and for the capacity in which he made the transfer").

imposed upon a party that was neither a seller, assignor or conveyor in the transaction.

Plaintiffs cannot and do not allege that GDB was the seller, assignor or conveyor of the leases at issue, nor do they claim that GDB played any role whatsoever in those assignments. To the contrary, Plaintiffs' Complaint stresses GDB's alleged absenteeism while the leases were being assigned by various private parties subsequent to their origination.

As previously noted, GDB's role as a fiscal agent for the Government in any securities transaction, pursuant to its legal authority under its Enabling Act, is aimed at protecting governmental instrumentalities by evaluating the maximum interest rate, maturity schedule and other financial terms of the proposed debt, prior to its issuance and preparing a report for the benefit of the Government as to the feasibility or desirability of the financing mechanism involved. Any "implied warranty" arising from this precisely delineated role would only benefit the governmental instrumentalities that require the GDB's assessment or recommendation, not any unrelated private parties such as Plaintiffs herein.

In the performance of its legally established role the GDB makes no representations regarding the validity of a particular debt, the likelihood that such debt will eventually be collected, or the absence of fraud in any subsequent transfer thereof.

Hence, Plaintiffs' claims against GDB in Counts V, VI and VII of the Complaint which are based upon a breach of "an implied warranty" are not actionable and must, therefore, be **DISMISSED.**

**C. IMPROPER PAYMENT THEORY**

Although not expressly set forth in the Complaint, in their Opposition Plaintiffs attempt to raise for the first time the "improper payment" theory codified in Art. 1116 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3166 (1990)[8] with respect to the Bayamón Lease. In essence, Plaintiffs claim that payment made by Bayamón to AA on or about May 2002 was improperly made because the lease had been previously assigned to Plaintiffs herein and therefore, payment must be effected a second time.

We find, however, that this doctrine is inapposite to the situation before us inasmuch as it only pertains to the debtor of the obligation being satisfied. Inasmuch as GDB is not a debtor to the Bayamón Lease, this legal doctrine does not prevent dismissal of the claims against it. We explain.

Under Puerto Rico Law, an obligation may be extinguished, *inter alios*, by its payment. Art. 1110 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3151 (1990). "Any person, whether he has an interest or not in the fulfillment of the obligation,... can make the

---

[8] Art. 1116 reads as follows:

> Payment must be made to the person in whose favor the obligation is constituted, or to another authorized to receive it in his name.

payment." Art. 1112 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3152. "Payment must be made to the person in whose favor the obligation is constituted." Art. 1116 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3166. While "payment made in good faith to the person who is in possession of the credit shall release the debtor," Art. 1118, 31 P.R. Laws Ann. §§ 3168 payment otherwise made to a third person is deemed invalid unless "it may have been beneficial to the creditor." Art. 1117 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3167.

Plaintiffs themselves concede that the Municipality of Bayamón is the debtor to the lease at issue. Complaint ¶ 17. GDB cannot be deemed a debtor who made an "improper payment" because there is no privity between Plaintiffs and GDB nor can Plaintiffs make such a claim.

Therefore, even if payment to AA were deemed improperly made - an issue we need not resolve for purposes of this Order - the only legal effect of such "improper payment" would be that the contractual obligation set forth in the Bayamón Lease remains in full force and effect and that payment remains due. However, inasmuch as GDB is not a party to the Bayamón Lease, it is not bound by such a conclusion. Thus, GDB cannot be liable to Plaintiffs under the theory of "improper payment."

Accordingly, Plaintiffs claims in Count V of the *Complaint* must be, and are hereby **DISMISSED.**

**D. AA AS AGENT OF GDB.**

In response to GDB's arguments for dismissal, Plaintiffs have proposed yet an alternate liability theory suggesting that AA acted as a "governmental agent" when executing the three financial leases at issue. However, no such allegation appears in the Complaint nor are there any facts asserted therein to support this conclusion. In their Complaint Plaintiffs merely claim that AA, "with the full knowledge and support of the Government of Puerto Rico, acted as or represented himself to be, an agent for the Government of Puerto Rico" and that the financial leases inured to "the benefit of the Government of Puerto Rico." Complaint ¶ 16. *See also*, ¶ 45.

However, according to the Complaint the GDB is a public corporation and banking institution which acts "independently of the Government of Puerto Rico" Complaint ¶ 10 and Plaintiffs themselves acknowledge that GDB "is not an 'arm of the state' [with an] independent corporate existence." Plaintiffs' Opposition (docket No. 28) p. 21, n.31.

Thus, even assuming *arguendo* that the assertion that AA acted as an agent of the Government of Puerto Rico was sufficient, Plaintiffs have not alleged any agency relationship between AA and the GDB.

The Complaint is devoid of any fact which could even remotely suggest that an agency relationship existed between AA and GDB. While Art. 1601 of the Puerto Rico Civil Code provides that an agency relationship may be express or implied, 31 P.R. Laws Ann. § 4422, the

existence of such authority may only be inferred "from the acts of the principal, from acts or deeds which manifestly reveal such declaration of consent necessarily implying, evidently and clearly, the intent to be bound." The Bank of Nova Scotia v. Vélez Rullán, 91 P.R.R. 347, 353 (1964).

The Complaint does not set forth any verbal or written manifestation by GDB nor any other conduct on its part which could have led Plaintiffs to reasonably believe that AA acted on GDB's behalf. Neither does the initial pleading allege that: AA's financing lease scheme was within the purview of GDB's usual business activities; GDB had a representative present either at the inception or the transfer of the leases, or that GDB acquiesced in any way to AA's purported representations regarding his role as a governmental agent. Rather, the essence of the allegations in the Complaint is that GDB failed to supervise and oversee the execution of the leases at issue as well as their subsequent transfers by AA and that these were entered into "without GDB authorization" or without "GDB intervention." *See*, Complaint ¶¶ 1, 22, 23, 66, 74 and 80.

It is evident from the pleading as well as the documents accompanying the dispositive motion that GDB played no role at the time the leases were transferred or sold either by AA or others to Plaintiffs herein. Hence, Plaintiffs cannot claim that any GDB actions reasonably led them to believe that AA was acting on GDB's

behalf. Further, no allegation is made that GDB benefitted in any way from the actions and/or alleged representations made by AA.

Based on the foregoing, Plaintiffs arguments regarding AA's alleged authority to act as a "governmental agent" are insufficient to prevent dismissal of any of their claims against GDB.

**E. INDEPENDENT CONTRACTOR**

In a further attempt to prevent the dismissal of the Bank, Plaintiffs contend that GDB is liable under Puerto Rico law because "a principal *may* be liable for the acts and omissions of his independent contractor" (italics supplied). However, the Complaint does not allege that AA was GDB's independent contractor nor have Plaintiffs provided any support for their conclusion that liability would attach to GDB were AA to be "considered" a Government's independent contractor.

The imposition of tort liability for the actions of a third party arises only under certain exceptional circumstances. *See*, Art. 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5142 (1990). *See also*, Pons-Anca v. Engerbreston, 2003 TSPR 150 (principal's liability for acts of independent contractor an exception to rule that duty to remedy injuries arises from one's own acts or omissions).

Even then, a principal may only be held accountable for the actions of an independent contractor when the task assigned to the latter entails "special risks, peculiar to the work to be performed

and that arise from its nature or the place where it must be performed, against which a reasonable man would recognize the need to take additional precautions." *Id.* (citing Martínez v. Chase Manhattan Bank, 108 D.P.R. 515, 521-23 (1979)). *See also*, Pérez v. Hato Rey Bldg. Co., 100 P.R.R. 880, 886 (1972) (citing Mariani v. Christy, 78 P.R.R. 729, 744-45 (1952)). ("[A]n independent contractor relationship arises when the contractor undertakes the stipulated work for a specific sum and when his remuneration is computed with reference to the quantity of the work performed by him.")

In the instant case, Plaintiffs failed to allege any facts for the court to infer that a principal-independent contractor relationship between GDB and AA existed. Further, there is no mention of GDB assigning any task or work to AA nor that GDB paid AA for any work performed.

Thus, the Complaint is devoid of a claim under the exception to the independent contractor theory.

**F. ESTOPPEL**

Plaintiffs also request that this Court grant them a remedy in equity, namely, estoppel. Plaintiffs allege that the GDB is estopped from denying them compensation under each one of the leases at issue inasmuch as the Bank purportedly committed itself to honor "any contract or assignment with any investor that purchased paper from any Puerto Rico government instrumentality." *See*, Counts V, VI and VII of the Complaint.

The Puerto Rico Supreme Court has unequivocally rejected application of the estoppel doctrine as developed in the common law to its local legal system. The court has forewarned against possible conflicts created by incorporating doctrines from other jurisdictions, particularly from the common law, into Puerto Rico's civil law tradition. Instead, it has utilized a similar equitable principle known as "doctrina de actos propios" and loosely translated as the "doctrine of one's own acts." Corraliza Rodriguez v. Banco Desarrollo Economico, 2001 TSPR 2, 6.

The doctrine of one's own acts flows from Art. 7 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 7 (1993),[9] which allows the court to interject equity principles in the absence of a specific applicable legal provision. Corraliza, 2001 TSPR at 6. "This principle is parallel to the doctrine of estoppel in English law," Int'l Gen. Elec. v. Concrete Builders of P.R., Inc., 104 D.P.R. 871, 877 (1976) (translation ours) and even though some connections exist between the two, there are differences in their development and content. Corraliza, 2001 TSPR at 7; Berrios, 116 D.P.R. at 97 n.2

---

[9] In pertinent part, it reads:

> When there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration.

(1985); Lausell Marxuach v. Diaz de Yañez, 103 D.P.R. 533, 537 (1975).

Art. 7 clearly provides that courts must not decide cases based in equity unless there is no applicable statute. It appearing that there is vast statutory authority applicable to the controversy at hand there is no need to decide the same on equity grounds.[10]

Even assuming *arguendo* that this doctrine is applicable to the GDB, the Complaint fails to allege sufficient factual grounds to warrant relief against the Bank thereunder. According to the Puerto Rico Supreme Court, the underlying premise of the doctrine of one's acts is that all parties are bound to act in good faith and hence, must not engage in conduct contradictory to previous behavior. In order to establish liability under this doctrine plaintiff must present evidence of (a) specific conduct, (b) which has brought about an apparent situation contrary to reality and capable of influencing the conduct of others, and (c) another party who has acted in good faith and in reliance thereto would be prejudiced should its trust be defrauded. Corraliza.

The foundation of the "doctrine of one's own acts" is that the proponent relied on another party's representation and disallowing relief would operate to its detriment. In this case there is no

---

[10] It must also be noted that this doctrine is generally inapposite to the actions of government officers and agents. *See*, Morales v. Mun. de Toa Baja, 119 D.P.R. 682, 692-3 (1987); Mendoza Aldarondo v. Asociación de Empleados, 94 D.P.R. 564 (1964).

evidence that Plaintiffs in any way relied on the alleged representations of GDB at the time the leases at issue were assigned and that by so doing they sustained damages.

Thus, we find that the doctrine of one's own acts is not applicable to the instant case.

The same holds true under the "unilateral statement of will," a related doctrine invoked by Plaintiffs and set forth by the Puerto Rico Supreme Court in Ortiz Rivera v. Puerto Rico Telephone Co., 2004 T.S.P.R. 133. In Ortiz Rivera, the court held that, in order for a promisor to be bound under the unilateral statement of will doctrine, the following elements must concur: (1) the volition of the individual who declares the intention of creating a duty or obligation; (2) sufficient legal capacity; (3) a clear intention of creating the obligation; (4) an object to the obligation; (5) complete certainty regarding the form and content of the statement; (6) a statement through a suitable legal act, and (7) the content of the obligation must not be contrary to the law, morals or public order.

In Ortiz Rivera, a letter addressed to various residents, including plaintiff Alba N. Ortiz Rivera, clearly and unequivocally indicated that the defendant contractor would repair any damages resulting from the installation of certain telephone lines in their properties. As will be discussed below, such an unequivocal statement is missing here.

Moreover, in that case the Puerto Rico Supreme Court noted that the residents had accepted the telephone line installation and assumed the risk of eventual damages on the basis of the representations made by the defendant contractor in its letter. Therefore, even in situations where a "unilateral declaration of will" is present, the party seeking to enforce the unilaterally assumed obligation must also demonstrate that it relied upon such declaration to its detriment.

In this case, Plaintiffs' basis for invoking the estoppel or "unilateral declaration of will" doctrines is the GDB's alleged representation to capital market investors that "it would honor any contract or assignment that purchased any paper from any Puerto Rico government instrumentality." Complaint ¶¶ 68, 75 and 81. This representation was purportedly made in the December 10, 2002 letter to Standard & Poor's. Complaint ¶ 23. However, a careful reading of the document evinces that GDB's statements therein do not have the implications that Plaintiffs contend.

The GDB merely acts as an agent of the Government when it pays government debts. It is not legally authorized to pay such debts from its own funds. *See*, GDB's "Constitutional Charter," 7 P.R. Laws Ann. § 552. This legal scenario controverts Plaintiffs' contention that the aforementioned statements could constitute a legally binding expression.

Moreover, the terms of the letter are clear and the document speaks for itself. It is specifically limited to lease agreements of the Executive Departments thus, on its face, is inapposite to the Bayamón Lease. Further, GDB expressly stated that agreements that involved the commission of fraud would not be honored and the Complaint is replete with allegations that pervasive fraud was involved in the assignments of all three leases.

Lastly, Plaintiffs do not and cannot dispute the fact that the assignments of all three leases occurred **prior** to GDB's letter to Standard & Poor's. Thus, Plaintiffs cannot claim that they relied upon such declaration to their detriment.

In sum, under either the doctrine of one's acts or the "unilateral expression of will" doctrines essential elements are missing. Plaintiffs have not and cannot allege that a representation was made whereby GDB agreed to pay monies due under the three leases at issue in this litigation nor cause payment thereof by the pertinent governmental instrumentalities. Neither have Plaintiffs alleged any facts upon which they relied to their detriment. Thus, as a matter of law, the GDB is not estopped from refusing the payments claimed by the Plaintiffs herein.[11]

---

[11] This is not to say that Plaintiffs are without legal recourse as against other appropriate parties particularly from AA, the entity which initially assigned the leases to CMI, as well as any other entities that may have misrepresented the nature of the financial leases.

Based on the foregoing, Plaintiffs' claims in Counts V, VI and VII of the Complaint which are based upon the estoppel doctrine are not legally sustainable and are also dismissed.

**G. "JOINT AND SEVERAL" LIABILITY**

Although not referenced in any particular Count, Plaintiffs' fourth request for relief seeks that this Court find Bayamón and the GDB "jointly and severally" liable for payment to the Investors of the amount due under the Bayamón Lease, plus interest. Complaint, Request for Relief (d).

Generally, an action for collection of monies arises from the non-fulfillment of a contractual obligation. *See*, Art. 1077 of the Puerto Rico Civil Code, 31 P.R Laws Ann. § 3052. Contracts shall only be valid as between the parties who executed them. Art. 1209 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 3374. Contractual joint-and-several responsibility is never presumed. Rather, the parties must expressly agree to it. *See*, Arts. 1090 and 1091 of the of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 3101-3102; Torrellas v. Scn. Torrellas, 57 D.P.R. 501 (1940).

In the instant case, Plaintiffs have not alleged nor is there any contractual relationship between Plaintiffs and the GDB. The GDB did not execute any legally binding agreement accepting "joint and

several" responsibility to pay the amounts allegedly due under the Bayamón Lease, or any other lease for that matter.[12]

Absent valid legal grounds for joint and several liability among the defendants, Plaintiffs' fourth request for relief as against the GDB is hereby **DISMISSED.**

**V. CONCLUSION**

Based on the foregoing, GDB's Motion to Dismiss (docket No. **22**)[13] is **GRANTED** and all of the claims asserted against GDB in the Complaint are hereby **DISMISSED WITH PREJUDICE.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 20th day of January, 2006.

S/Raymond L. Acosta
RAYMOND L. ACOSTA
United States District Judge

---

[12] The court having already determined that GDB has not incurred in any tort liability under Art. 1802 the Bank cannot be considered a joint-tortfeasor with the concomitant joint-and-several responsibility with codefendant Bayamón, even if such a claim had been adequately set forth in the Complaint.

[13] *See*, Plaintiffs' Opposition (docket No. **28**); GDB's Reply (docket No. **38**) and Plaintiffs' Sur-Reply (docket No. **41**).