IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CMI CAPITAL MARKET INVESTMENT, LLC, et al.,

    Plaintiffs,

    v.

MUNICIPALITY OF BAYAMON, et al.,

    Defendants.

CIVIL NO. 04-1638 (RLA)

**ORDER DISMISSING COUNTS I, II AND III OF THE COMPLAINT ASSERTED AGAINST THE MUNICIPALITY OF BAYAMON**

Plaintiffs[1] instituted these proceedings against the Government Development Bank ("GDB" or "the Bank")[2] and the Municipality of Bayamón ("Bayamón" "Municipality") seeking to collect payment and/or for damages based on three finance lease agreements entered into by two agencies of the Puerto Rico Government[3] and by codefendant the Municipality of Bayamón handled by a Mr. Alvin Aguirre, and/or companies operated by him, including AA Public Finance Co., Inc.,

---

[1] Named plaintiffs are: CMI Capital Market Investment, L.L.C. ("CMI"), Wilmington Trust Company, as trustee of the PR Tax Exempt Lease Certificate Trust 2002 Series A ("Wilmington"), and investors Richard J. Schmeelk ("Schmeelk"), William B. Finnerman and JIRA Associates limited Partnership (collectively referred to herein as "Plaintiffs").

[2] The claims asserted against the GDB have been previously dismissed. *See*, Order Dismissing Claims Asserted against the Government Development Bank (docket No. 68) and Order Denying Motion for Reconsideration issued on this date.

[3] These are the Puerto Rico Office of Courts Administration (by its Spanish acronym, "OAT") and the Puerto Rico Consumer Affairs Department (by its Spanish acronym, "DACO").

(hereinafter jointly referred to as "AA"), and eventually assigned by AA to the Plaintiffs.

The Municipality has moved for summary judgment alleging that it never authorized any such assignment to plaintiffs herein and that the underlying documents evidencing such a transaction are false and fraudulent. Plaintiffs' response is basically that summary judgment is premature and that discovery is warranted instead under Rule 56(f) Fed. R. Civ. P.

## RULE 56(f)

Parties wishing to conduct discovery prior to responding to summary judgment requests must comply with the provisions of Rule 56(f) Fed. R. Civ. P. which reads:

> Should it appear from the affidavits[4] of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may ... order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had....

The Municipality objected to plaintiffs' request pointing to a procedural deficiency in that the Rule 56(f) petition was not presented via an affidavit as provided for in the aforementioned provision. However, it has been held that a sworn statement is not indispensable provided that the "statement... [is] made, if not by

---

[4] Plaintiff failed to submit a sworn statement validating her reasons for the request.

**CIVIL NO. 04-1638 (RLA)**                                                                **Page 3**

affidavit, then in some authoritative manner - say, by the party under penalty of perjury or by written representations of counsel subject to the strictures of Fed. R. Civ. P. 11". <u>Vargas-Ruiz v. Golden Arch Dev., Inc.</u>, 368 F.3d 1, 4 (1st Cir. 2004) (*citing* <u>Paterson-Leitch co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 988 (1st Cir. 1988)). *See also*, <u>Velez v. Awning Windows, Inc.</u>, 375 F.3d 35, 40 (1st Cir. 2004).

"To benefit from the protections of Rule 56(f), a litigant ordinarily must furnish the *nisi prius* court with a timely statement - if not by affidavit, then in some other authoritative manner that (i) explains his or her current inability to adduce the facts essential to filing an opposition, (ii) provides a plausible basis for believing that the sought-after facts can be assembled within a reasonable time, and (iii) indicates how those factors would influence the outcome of the pending summary judgment motion." <u>Velez</u>, 375 F.3d at 40. *See also*, <u>Hernandez-Santiago v. Ecolab, Inc.</u>, 397 F.3d 30, 34-35 (1st Cir. 2005) (need to identify discovery demanded and explain its relevancy).

The rule requires petitioner to identify for the court the particular discovery it wishes to conduct as well as present credible grounds to conclude that the information sought, if available, would prove crucial in contesting material facts propounded by the summary judgment proponent. "[T]he requested discovery [must] be capable of

**CIVIL NO. 04-1638 (RLA)**                                                                 **Page 4**

influencing the outcome of the motion for summary judgment." <u>Adorno v. Crowley Towing and Transp. Co.</u>, 443 F.3d 122, 128 (1st Cir. 2006). Rule 56(f) mandates that the proponent "articulate some plausible basis to support a belief that discoverable material exists which, if available, would suffice to raise a trialworthy issue." <u>Filiatrault v. Comverse Technology, Inc.</u>, 275 F.3d 131, 138 (1st Cir. 2001). "[T]he moving papers must contain a proffer which, at a bare minimum, articulates a plausible basis for the movant's belief that previously undisclosed or undocumented facts exist, that those facts can be secured by further discovery, and that, if obtained, there is some credible prospect that the new evidence will create a trialworthy issue." <u>Mass. School of Law at Andover, Inc. v. American Bar Association</u>, 142 F.3d 26, 44 (1st Cir. 1998). "To receive the benefit of Rule 56(f), the movant must (1) articulate a plausible basis for the belief that discoverable materials exist which would raise a trial worthy issue, and (2) demonstrate good cause for failure to have conducted the discovery earlier." <u>Fennell v. First Step Designs, Ltd.</u>, 83 F.3d 526, 531 (1st Cir. 1996) (internal quotations and citations omitted).

Central to this rule's applicability is the proponent's due diligence in the judicial proceedings. <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 93 (1st Cir. 1996). "To savor the balm of Rule 56(f), a party must act in a timely fashion." <u>Mass. School of Law</u>, 142 F.3d at 44. Additionally, "the motion must set forth good cause

**CIVIL NO. 04-1638 (RLA)**                                                                 **Page 5**

to explain the movant's failure to have conducted the desired discovery at an earlier date." *Id.*

There are a total of four (4) causes of action alleged against Bayamón in these proceedings. These are: Count I - Declaratory Judgment, Count II - Collection of Monies, Count III - Breach of Contract and Count VI - Investors' Damage. We shall proceed to closely analyze each one of them in light of the arguments presented by both sides to the controversy to ascertain whether or not additional time should be allowed for discovery.

### Count I - Declaratory Judgment

In this particular claim plaintiffs pray for the court to determine "(a) that [they] are the rightful assignees and only parties entitled to receive payments under the Municipality's lease, and (b) that the Municipality's unlawful payment to another party is a material breach of the lease and its assignment, and is an event of default".[5]

In support thereof, plaintiffs allege that they are the lawful assignees of the lease in controversy;[6] that Aguirre, as the Municipality's agent, warranted its validity;[7] that despite having agreed to the assignments in writing[8] the Municipality caused payment

---

[5] Complaint ¶ 48.
[6] Complaint ¶ 44.
[7] Complaint ¶ 45.
[8] Complaint ¶ 46.

**CIVIL NO. 04-1638 (RLA)**                                                          **Page 6**

thereof to be made to AA which no longer had any right over those monies.[9]

### Count II - Collection of Monies

In Count II plaintiffs, as purportedly rightful owners of the lease, demand payment of monies allegedly due thereunder.

### Count III - Breach of Contract

Plaintiffs charge that the Municipality breached its duty to make payments due under the leases assigned to them and demand payment of the monies due as well as damages resulting from the breach.

### Count VI - Investors' Damage

The nature of this last cause of action varies from the previous three in that it is predicated on different grounds. Essentially, plaintiffs contend that the Municipality disregarded controlling legal and regulatory provisions in the approval of the lease in question as well as failed to establish the necessary safeguards for the subsequent handling of the lease in question which led to the fraudulent conduct on the part of AA.

### MOTION FOR SUMMARY JUDGMENT

In their summary judgment request the Municipality has presented evidence to establish that: the lease contract specifically prohibited its assignment; the signatures of the alleged municipal officers consenting to the assignments are fraudulent; the

---

[9] Complaint ¶ 47.

**CIVIL NO. 04-1638 (RLA)** **Page 7**

assignments were never recorded with either the Municipality or the Comptroller's Office and when Bayamón paid the monies due under the contract it had no prior notice of the alleged assignments.

As grounds for their Rule 56(f) petition plaintiffs contend that they are not in a position to defend because, "it was not until [Bayamón's] January 13th Motion that Plaintiffs learned for the first time Bayamón's position regarding... the allegation that the representative's signature found in the November 26th, 2006 [sic] Acknowledgments of Assignment... are [sic] fraudulent and/or forged. Moreover, until that date, Plaintiffs were completely unaware of the fact that Bayamón had requested an investigation to [sic] the Federal Bureau of Investigations (the "FBI") regarding the assignment of the CAF and another supposedly fraudulent financial document, all related to AA."[10]

However, at least by **January 26, 2004** - six months prior to instituting this suit[11] - and in response to inquiries from plaintiffs' own counsel, the Municipality specifically alerted plaintiffs to the fact that: the lease could not be assigned; there was no written consent for the assignment; the signature on the assignment documents was not valid, and payment could not be made as requested because the totality of the lease had been paid in May

---

[10] Objection to Bayamon's Motion for Summary Judgment (docket No. 89) pp. 5-6.

[11] The complaint was filed on June 25, 2004.

**CIVIL NO. 04-1638 (RLA)**                                                                 **Page 8**

2002. This letter further forewarned plaintiffs' counsel that based on their inquiries, the matter had been referred to the FBI.

Subsequently, on June 11, 2004, counsel for the Municipality reiterated to the attorneys representing plaintiffs the reasons why payment was not legally feasible and also offered them all information available to the Municipality. In pertinent part, the letter reads:

> As per our telephone conversation, I hereby ratify our disposition to meet with you in Puerto Rico and share all the information we have related to AA Public Finance.
>
> The Municipality of Bayamón cannot make any payments in favor of your client, inasmuch [as] the documents of the alleged assignment of the lease are fraudulent. The totality of the lease was paid to AA Public Finance on [sic] May 2002...
>
> Nevertheless, the Mayor, Hon. Ramón Luis Rivera Cruz, has instructed us to provide to CMI all the information that could help CMI to collect from AA Public Finance Co., Inc.

Lastly, on August 20, 2004 plaintiffs' counsel requested a certified contract of the lease contract.

Based on the foregoing, we reject plaintiffs' argument of surprise regarding the fraud surrounding the assignments and unavailability of information in this regard. All pertinent

documentation related to the claims for declaratory judgment, collection of monies and breach of contract have been laid out in the record and we cannot anticipate nor have plaintiffs advanced what possible additional information could be elicited by way of discovery to defeat the summary judgment petition insofar as these three causes of action are concerned.

Accordingly, we fail to see any reason not to proceed to rule on the pending summary judgment request with respect to Counts I, II and III of the complaint.

On the other hand, inasmuch as the Municipality's summary judgment motion does not address the merits of Count VI claiming investors' damage we need not dispose of this particular cause of action which, in turn, renders moot any Rule 56(f) argument addressed to this specific claim.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the

**CIVIL NO. 04-1638 (RLA)** **Page 10**

absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir.1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit

**CIVIL NO. 04-1638 (RLA)**                                                              **Page 11**

Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez -Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

**CIVIL NO. 04-1638 (RLA)** **Page 12**

## THE FACTS

We find the following facts relevant to Claims I, II and III are uncontested:

1. On **September 21, 2001,** Bayamón, as lessee, entered into a Municipal Lease Agreement (Lease No. MPR-010477) with AA, as lessor.

2. Lease No. MPR-010477, subscribed by the Municipality and AA, was recorded with the Puerto Rico Comptroller's Office **on September 21, 2001.**

3. The lease agreement specifically disallowed assignments of the contract by AA. In this respect, Art XI, sec. 11.1 of the contract provided: "This Lease Agreement, and the obligations of Lessee [Municipality] to make payments hereunder, **may not be assigned by Lessor** [AA]." (Emphasis ours).

4. Payment under the terms of the lease agreement were due by the Municipality as follows:

   | Date | Amount |
   | --- | --- |
   | On **9/21/01**[12] | $822,331.34 |
   | On or before **9/30/02** | $924,680.63 |
   | On or before **9/30/03** | $924,680.63 |
   | On or before **9/30/04** | $924,680.63 |

---

[12] Date of execution of the agreement.

5.  On **November 20, 2001,** AA assigned the lease to plaintiff CMI without Bayamón's knowledge or consent.

6.  On **November 26, 2001,** CMI, in turn, assigned the lease to the plaintiff-investors without Bayamón's knowledge or consent.

7.  On **November 26, 2001,** AA, CMI and the plaintiff-investors signed individual documents entitled Acknowledgment of Assignment.

8.  Each Acknowledgment of Assignment also appears signed on behalf of the lessee Municipality but the name of the signatory is illegible.

9.  The title of the person signing on behalf of the Municipality does not appear in any of the Acknowledgments.

10. The signature of the person allegedly subscribing the Acknowledgments on behalf of Bayamón is not registered in the Municipal records "nor does [it] look[] like any signature registered within [the municipal] records, for the year 2001." January 12, 2006 Certification by Ms. María Muñoz Rovira, Municipal Secretary.

11. The aforementioned Acknowledgments of Assignment were never registered either with the Municipality nor with the Puerto Rico Comptroller's Office.

**CIVIL NO. 04-1638 (RLA)** **Page 14**

12. On January 31, 2002 AA certified the cancellation balance due on the lease which was subsequently recalculated by the Municipality as **$2,699,404.13 as of May 15, 2002.**

13. On **April 18, 2002,** the Bayamón Municipal Assembly approved the issuance of bonds in the amount of $6,975,000.00 which was signed by the Mayor on that same date. Among the purposes of the Resolution was to refinance the balance of the lease agreement for the Lease Agreement.

14. On **May 23, 2002** the Municipality issued a check made payable to AA in the amount of **$20,782.46.**

15. On **May 24, 2002** the Municipality issued a check made payable to AA in the amount of **$2,678,621.67.**

16. On **June 11, 2003** CMI notified the Municipality in writing of the assignment by AA and that payment due under the lease agreement should be made in its favor commencing on **September 24, 2003.**

**PUERTO RICO LEGAL PROVISIONS**

In Puerto Rico, in order for a contract to be valid, three elements must coincide: (1) the consent of the contracting parties, (2) an object subject of the contract and (3) cause for the obligation being contracted by the parties. Art. 1213 of the P.R. Civ. Code, P.R. Laws Ann. tit. 31, § 3391 (1990). Garriga, Hijo, Inc. v. Cond. Marbella, 143 D.P.R. 927, 933 n.3 (1997). *See also*, APA Int'l Film Distrib., Inc. v. Corp. de P.R. para la Difusion Publica,

394 F.Supp.2d 443, 450 (D.P.R. 2005) ("a contract has three requisite elements for its formation, and are binding as long as the essential conditions required for their validity exist."); Caraballo Cordero v. Banco Financiero de P.R., 208 F.Supp.2d 185, 189 (D.P.R. 2002) ("Under Puerto Rico law a contract comes into existence" when [these three elements are present). "[T]here is no contract unless [these]... requisites exist". Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 954 F.Supp. 438, 448 (D.P.R. 1996).

It is undisputed that in the case presently before us the consent of the Municipality to the purported assignments - a mandatory legal condition for its validity - is lacking. The documents purportedly evincing Bayamón's approval to the transfer of rights were forgeries apparently generated by AA and thus, have no legal effect upon the Municipality. *See*, Soto v. Rivera, 144 D.P.R. 500, 514 n.3 (1997) (absent the required consent, the contract is null and void and has no validity whatsoever).

Accordingly, plaintiffs may not properly claim a declaratory judgment, breach of contract, or seek to collect monies thereunder against the Municipality.

It is also important to note that the Lease Agreement specifically prohibited assignments. Thus, at all times, plaintiffs were apprised of this restriction. Further, there is no evidence that Bayamón was notified of the alleged assignments prior to liquidating the sums due AA in May of 2002. No proof has been submitted to

controvert the fact that plaintiffs first advised the Municipality of their alleged rights to these funds over one year after payment of the entire sum had already been effected.

Lastly, the purported acknowledgments of the assignments between plaintiffs and AA were never registered either at the Municipality[13] or at the Comptroller's Office[14] as mandated by law. Specifically, P.R. Ann. tit. 2, § 97(d) (supp. 2006) precludes payment under any contract which has not been registered in accordance with the provisions of the statute. *See also*, Ortiz v. Mun. de Guayama, 2004 TSPR 166 (contracting parties may not demand execution of contract provisions until the contract has been registered with the Comptroller as required by law).

---

[13] In pertinent part, P.R. Laws Ann. tit. 21, § 4366 (2005) provides:

> The municipalities shall keep a record of all contracts granted, including the amendments thereto, and shall remit a copy of them... to the Office of the Comptroller.

[14] In pertinent part, P.R. Laws Ann. tit. 2, § 97 (supp. 2006) provides:

> (a) The... municipalities of the Commonwealth of Puerto Rico, with no exception whatsoever, shall keep a registry of all contracts executed, including amendments thereto, and shall remit a copy thereof to the Office of the Comptroller within fifteen (15) days following the date of the execution or amendment of the contract.

**CONCLUSION**

Based on the foregoing, the Motion for Summary Judgment filed by Bayamón (docket No. **62**) is **GRANTED** with respect to Counts I, II and III of the complaint which are hereby **DISMISSED.**[15]

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 31st day of October, 2006.

                                        S/Raymond L. Acosta
                                        RAYMOND L. ACOSTA
                                   United States District Judge

---

[15] *See*, Objection (docket No. **89**) and Reply (docket No. **96**).